IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lancaster County District Attorney's    :
Office    :
    :
          v.    :   No. 1457 C.D. 2019
    :   Argued: December 7, 2020
Carter Walker and LNP/Lancaster    :
Online and The County of Lancaster    :
    :
Appeal of: Carter Walker and LNP/    :
Lancaster Online    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT          FILED: February 10, 2021

Carter Walker and LNP/Lancaster Online (collectively, Requesters) appeal an order of the Court of Common Pleas of Lancaster County (trial court) that denied their request for records related to civil forfeitures conducted under the statute commonly referred to as the Controlled Substances Forfeiture Act.[2] In doing so, the trial court reversed a final determination of the Office of Open Records. The trial court concluded that the Right-to-Know Law[3] did not require the Lancaster County District Attorney's Office to disclose the names of persons who purchased forfeited property at the annual auction of the Lancaster County Drug Task Force. On appeal, Requesters contend that the trial court erred in applying the so-called "balancing

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

[2] 42 Pa. C.S. §§5801-5808.

[3] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

test" because participants in a public auction have, at most, a minor privacy interest in their identities and that interest is outweighed by the public interest in ensuring that forfeited property is handled by law enforcement authorities in accordance with the terms of the Controlled Substances Forfeiture Act.[4]  For the reasons to follow, we reverse.

On September 7, 2018, Carter Walker, a reporter with the LNP Media Group, submitted a written request to the Lancaster County District Attorney's Office, which stated, in pertinent part, as follows:

> This is a request under Pennsylvania's Right[-]to[-]Know Law….
>
> I am requesting documentation related to forfeitures and expenses under Pennsylvania Title 42, Chapter [5]801 – Controlled Substance[s] Forfeiture[ Act].[5]  Specifically, I am requesting complete documentation in each year from 1/1/2008 to present which shows the following information:

---

[4] The Controlled Substances Forfeiture Act authorizes the civil forfeiture of any property, including houses, vehicles and "money … furnished or intended to be furnished by any person in exchange for a controlled substance … , and all proceeds traceable to such an exchange."  42 Pa. C.S. §5802(6)(i)(A).  The statute establishes the standards for a lawful seizure and forfeiture of private property used to advance an unlawful drug transaction and the procedures for effecting a lawful forfeiture.  *See Commonwealth v. Real Property and Improvements Known as 2314 Tasker Street Philadelphia, PA 19145*, 67 A.3d 202, 207 (Pa. Cmwlth. 2013).

Once forfeited, the property is transferred to the local district attorney or the Attorney General, depending on the jurisdiction of the law enforcement authority effecting the seizure.  42 Pa. C.S. §5803(f).  The district attorney or Attorney General may retain the property for official use or sell the property and distribute the proceeds in accordance with other provisions in the Controlled Substances Forfeiture Act.  *Id*.

As a matter of public policy, the goal of the Controlled Substances Forfeiture Act is to "eliminate economic incentives of drug-related activity and thereby deter such activity."  *Commonwealth v. Jackson*, 53 A.3d 952, 955 (Pa. Cmwlth. 2012) (quoting *Commonwealth v. Heater*, 899 A.2d 1126, 1132 (Pa. Super. 2006)).

[5] The request referenced former chapter 6801, which was repealed by our General Assembly by the Act of June 29, 2017, P.L. 247, effective July 1, 2017.

- After the item was forfeited, documentation that shows how it was processed, whether that was sale, reutilization, or distribution to other law enforcement agenc[ies] or personnel. Documentation should identify the property, what was done with the item (sold or distributed), date sold/distributed, who the item was distributed to if it was distributed, and how much the item was sold for if it was sold.

Reproduced Record at 224a (R.R. __).

The District Attorney's Office denied the request for the stated reason that it sought "information that would be prepared for the Attorney General's audit" and, thus, was "not to be disseminated and shall remain confidential." R.R. 228a. The District Attorney's Office also responded that the records were exempt from disclosure because they constituted criminal and noncriminal investigative records. Section 708 of the Right-to-Know Law[6] exempts investigative records from disclosure.

---

[6] Section 708 of the Right-to-Know Law states, in pertinent part, as follows:

> (b) Exceptions.--Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:
>
> * * *
>
> > (16) *A record of an agency relating to or resulting in a criminal investigation, including*:
> >
> > > (i)    Complaints of potential criminal conduct other than a private criminal complaint.
> > >
> > > (ii)   Investigative materials, notes, correspondence, videos and reports.
> > >
> > > (iii) A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.

Requesters appealed to the Office of Open Records (OOR).  On January 7, 2019, the OOR issued a final determination directing the District Attorney's Office to provide all responsive records within 30 days.  The OOR so held because the governing statute, the Controlled Substances Forfeiture Act, did not protect the requested records from disclosure.  Further, the District Attorney's Office did not

---

(iv) A record that includes information made confidential by law or court order.

(v) Victim information, including any information that would jeopardize the safety of the victim.

(vi) A record that, if disclosed, would do any of the following:

* * *

(E) Endanger the life or physical safety of an individual.

* * *

(17) *A record of an agency relating to a noncriminal investigation, including*:

(i) Complaints submitted to an agency.

(ii) Investigative materials, notes, correspondence and reports.

(iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.

(iv) A record that includes information made confidential by law.

(v) *Work papers underlying an audit*.

(vi) A record that, if disclosed, would do any of the following:

* * *

(E) Endanger the life or physical safety of an individual.

65 P.S. §67.708(b)(16)-(17) (emphasis added).

4

provide any evidence that the records were related to an investigation, whether criminal or civil.

The District Attorney's Office appealed to the trial court. Thereafter, the Office produced extensive records about the annual auction of forfeited property conducted by the Lancaster County Drug Task Force. The records, 221 pages in length, included a list of each item sold; the lot number; the bidder number; a description of the item; and the amount paid for the item. However, the Office did not provide Requesters with the bidder registration forms, which identified the name, address, and driver's license number of the individuals who registered to participate in the auction.

On August 23, 2019, the trial court conducted a hearing. The District Attorney's Office presented both testimonial and documentary evidence. Former Lancaster County District Attorney, Craig Stedman, testified. He explained that property seized and forfeited under the Controlled Substances Forfeiture Act is sold at an annual auction of the Lancaster County Drug Task Force. To receive a bidder number, the applicant must complete a registration form that identifies the bidder's name, home address, and driver's license number.

Stedman testified that the District Attorney's Office did not release the bidder registration forms because the bidders were not given any notice that this information could be released in response to a Right-to-Know Law request. Notes of Testimony, 8/23/2019, at 31 (N.T. __); R.R. 577a. Stedman also testified that the release of the bidder's name, address, and driver's license number would mean that "the drug dealers who had that property would be able to identify the individual who acquired their property." N.T. 31; R.R. 577a. On cross-examination, Stedman

5

acknowledged that the annual auction is open to all members of the public, including the former owners of the forfeited property.

Requesters also presented testimonial and documentary evidence. Carter Walker testified about the civil forfeiture records Requesters obtained from Berks, Centre, Chester, Dauphin, Delaware, Lebanon, and York Counties. All provided the records refused by Lancaster County. Walker explained that these records are important because they can be used to determine whether forfeited property has been handled in accordance with the law.

On September 12, 2019, the trial court sustained the appeal of the District Attorney's Office. It held as follows:

> In consideration of the specific language of Item 2 and the privacy considerations of the private parties who purchased items at the Lancaster County Drug Task Force auctions, the *Lancaster County Office of the District Attorney is not required to produce records that disclose the identities, home addresses, and/or driver's license numbers of the private parties who bid* upon property sold at the Lancaster County Drug Task Force auctions.

Trial Court Order, 9/12/2019, at 1 (emphasis added).

The trial court reasoned, first, that the request did not specifically seek the names of the bidders. The request sought the identity of individuals or agencies to whom any items were distributed, but it did not seek the identity of those who made purchases at a public auction. Thus, the District Attorney's Office could properly deny the request on that basis alone.

Second, the trial court held that the disclosure of the bidder registration forms raised privacy concerns. Although the annual auction is public, the registered bidders were not informed that "their names, addresses, or other personal information may be obtained by a [Right-to-Know Law] request." Trial Court Op.

6

9/12/2019, at 17. This privacy interest triggered the balancing test established in *Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016) (*PSEA*). Simply, where a privacy interest is implicated in a Right-to-Know Law request, that interest must be weighed against the public interest in disclosure.

The trial court acknowledged that there is public interest in full transparency with respect to the disposition of private property that has been forfeited to the government. However, the trial court explained that

> the general auction records of what was sold and for how much are relevant under the [Right-to-Know Law] to show the "money trail" leading in and out of [the District Attorney's Office]. The requested *disclosure of the names and home addresses of private bidders* at the yearly [Drug Task Force] auction is not closely related to the official duties of the [District Attorney's] Office and *does not provide insight into its official actions*.

Trial Court Op., 9/12/2019, at 18 (emphasis added). Thus, the trial court concluded that the "privacy interest of the individual bidders outweighs the public interest in disclosing the information contained on the bidder registration forms." *Id.*

Requesters appealed to this Court. On appeal,[7] Requesters argue that the trial court erred by reversing the OOR's final determination that the District Attorney's Office must produce the bidder registration forms. First, they contend that their request for these records was sufficiently specific under the Right-to-Know Law. Second, they contend that the trial court misapplied the balancing test because

---

[7] This Court reviews a trial court's decision to determine whether findings of fact are supported by substantial, competent evidence, whether the trial court committed an error of law, or whether the trial court abused its discretion. *Borough of Pottstown v. Suber-Aponte*, 202 A.3d 173, 178 n.8 (Pa. Cmwlth. 2019) (quotation omitted). This Court's scope of review for a question of law is plenary. *Id.*

the intrusion on privacy is insignificant and far outweighed by the public interest in the disclosure of the identity of persons purchasing forfeited property.

We begin, first, with Requesters' argument that the trial court erred in holding that their request was insufficiently specific. They explain that their request for "documentation showing how the forfeited property was processed" was broadly stated and covered the names of the individuals who purchased forfeited property at the auction.

Section 703 of the Right-to-Know Law provides that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested…." 65 P.S. §67.703. "A request for a broad category of documents, such as all records, may be sufficiently specific if confined to a particular recipient or recipients." *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1125 (Pa. Cmwlth. 2015). In *Carey v. Pennsylvania Department of Corrections*, 61 A.3d 367, 372 (Pa. Cmwlth. 2013), this Court held that a request for "all records that were provided to the transferred inmates" was sufficiently specific because it was limited by recipient identity. By contrast, in *Montgomery County v. Iverson*, 50 A.3d 281, 284 (Pa. Cmwlth. 2012), this Court held that a request for all "emails sent from the [c]ounty's domain to four other domains" was insufficiently specific.

To determine whether a request is sufficiently specific, this Court examines "(1) the subject matter of the request; (2) the scope of the documents sought; and (3) the timeframe for which records are sought." *Pittsburgh Post-Gazette*, 119 A.3d at 1124. "The subject matter of the request must identify the 'transaction or activity' of the agency for which the record is sought." *Id.* at 1125. The document request should be presented either by type of record or by recipient.

8

*Office of the District Attorney of Philadelphia v. Bagwell*, 155 A.3d 1119, 1143 (Pa. Cmwlth. 2017).

> Here, as noted, Requesters sought:

> [D]ocumentation related to forfeitures and expenses under Pennsylvania Title 42, Chapter [5]801 – Controlled Substance[s] Forfeitures. Specifically, [Requesters are] requesting complete documentation in each year from 1/1/2008 to present….

R.R. 224a. This request is specific as to timeframe, activity and recipient. In addition, Requesters provided specific explication:

> After the item was forfeited, *documentation that shows how it was processed, whether that was sale, reutilization, or distribution to other law enforcement agenc[ies] or personnel*. Documentation should identify the property, what was done with the item (sold or distributed), date sold/distributed, who the item was distributed to if it was distributed, and how much the item was sold for if it was sold.

*Id*. (emphasis added). In sum, Requesters sought documents on "how" the forfeited item "was processed," whether by "sale, reutilization, or distribution." *Id*. The request then provided explanatory examples, such as "what was done [to] the item" and "who" received the distributed property.

The specificity requirement is satisfied where the agency can determine which records are sought. *See* Section 703 of the Right-to-Know Law, 65 P.S. §67.703 (sufficient specificity is that which allows "the agency to ascertain which records are being requested…."). Before the trial court, Stedman testified that the request sought "individual auction files," which encompassed "the name of the individual who bought" the auctioned item. R.R. 576a. This testimony alone established that Requesters satisfied the specificity requirement. Indeed, the District

Attorney's Office challenged the request precisely because Requesters sought the names of the purchasers.

We conclude that Requesters' request satisfied the specificity requirement of Section 703 of the Right-to-Know Law. We reject the trial court's contrary holding.

In their second issue, Requesters contend that the trial court misapplied the balancing test set forth in *PSEA*, 148 A.3d at 157-58, and *Reese v. Pennsylvanians for Union Reform*, 173 A.3d 1143 (Pa. 2017). They argue that the privacy interest at issue in this case is minimal and far outweighed by the public interest in ensuring that forfeited property is lawfully handled and distributed.

Section 102 of the Right-to-Know Law defines a "record" as

> [i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. §67.102.[8] Plainly, the auction bidder information is a "record" because it is information received and retained by the District Attorney's Office in conjunction with its "transactions and activities" under the Controlled Substances Forfeiture Act,

---

[8] Any "record" which is in the possession of a Commonwealth agency or local agency is presumed to be a public record unless:

    (1) the record is exempt under section 708;

    (2) the record is protected by a privilege; or

    (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree.

Section 305 of the Right-to-Know Law, 65 P.S. §67.305.

10

namely the sale of property it has obtained through civil forfeiture. Disclosure of public records promotes "access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *State Employees' Retirement System v. Fultz*, 107 A.3d 860, 866 (Pa. Cmwlth. 2015).

Nevertheless, certain "types of information should not and, under the law, will not be subject to disclosure." *Delaware County v. Schaefer ex rel. The Philadelphia Inquirer*, 45 A.3d 1149, 1153 (Pa. Cmwlth. 2012). Personal identification information is "information that is unique to a particular individual [that] may be used to identify or isolate an individual from the general population." *Id.* at 1153. It is information "which makes an individual distinguishable from another." *Id.* Some personal identification information is expressly exempted from disclosure by the Right-to-Know Law. Under Section 708(b)(6) of the Right-to-Know Law, this includes:

> (A) *A record containing all or part of a person's Social Security number, driver's license number*, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
>
> * * *
>
> (C) The home address of a law enforcement officer or judge.

65 P.S. §67.708(b)(6)(i)(A), (C) (emphasis added). Additionally, records containing identities of minors are exempt from disclosure. Section 708(b)(30) of the Right-to-Know Law, 65 P.S. §67.708(b)(30). Notably, the names of persons who purchase forfeited property at a public auction are not included in the exemption list.

11

In *PSEA*, the Pennsylvania Supreme Court established that "[t]he right[] to informational privacy" is guaranteed by Article I, Section 1 of the Pennsylvania Constitution, PA. CONST. art. I, §1, which must be respected "when disseminating requested information." *PSEA*, 148 A.3d at 156. This "respect" is not limited to the exceptions set forth in Section 708(b) of the Right-to-Know Law. The balancing test weighs "privacy interests and the extent to which they may be invaded against the public benefit which would result from disclosure." *Id*. at 154-55 (citations omitted). Lest there be any doubt, in *Reese,* 173 A.3d at 1159, the Pennsylvania Supreme Court reaffirmed that "the *PSEA* balancing test is applicable to all government disclosures of personal information, including those not mandated by the [Right-to-Know Law] or another statute."

The trial court held that the names, addresses, and driver's license numbers of successful bidders are protected by the constitutional right of privacy and the public interest in this information did not outweigh that privacy right. Requesters concede that the redaction of the home addresses and driver's license numbers is appropriate.[9] Accordingly, the sole question in this appeal concerns the names of the purchasers.

There is a public interest in transparency about civil forfeiture. Notably, the Controlled Substances Forfeiture Act prohibits the sale of forfeited property to an employee of the district attorney or an employee of another law enforcement authority. 42 Pa. C.S. §5803(f.1).[10] Requesters contend, that "[p]ublic

---

[9] In their brief, Requesters acknowledge that "it is possible that home addresses and driver's license numbers are sensitive information requiring redaction[.]" Requesters' Brief at 14. Further, Requesters concede that "[i]t may be the case … that 65 P.S. §67.708 would require redaction of bidder home addresses and driver's license numbers from bidder registration forms." *Id.* at 15 n.4.

[10] This provision states:

12

disclosure of the identities of purchasers of forfeited properties enables oversight of law enforcement who might otherwise be incentivized to seize property with the ultimate intent of purchasing it later at auction." Requesters' Brief at 16. We agree.

The Controlled Substances Forfeiture Act does not require the disclosure of the names of the persons who purchase forfeited items, and it does not shield their names from disclosure. Requesters contend that participants in a public auction do not have a reasonable expectation that their identities be confidential. Anyone can attend and observe the bidding process, including the prior owner of the forfeited items. Notably, there was no testimony from any auction registrant that he expected his identity to be confidential.

Conversely, the stated reason offered by the District Attorney's Office to withhold the names of the auction registrants, *i.e.*, risk of harm, was speculative. The Office offered no evidence that the disclosure of the names of auction registrants was reasonably likely to result in a demonstrable risk of physical harm or loss of personal security. *See Pennsylvania Department of Health v. McKelvey* (Pa. Cmwlth., No. 1372 C.D. 2017, filed September 27, 2018) (unreported) (speculative claim in affidavit did not support personal security exemption); *Delaware County*, 45 A.3d at 1158 ("general reference to a report which ostensibly explains how identity thieves use home addresses and dates of birth to perpetrate new financial account fraud is not sufficient to constitute [] proof…"). Indeed, at the hearing, Stedman testified that he was unaware of any person ever being adversely affected by the release of forfeiture records by any county.

---

(f.1) Prohibited sales.--Sale of forfeited property to an employee of the district attorney or Attorney General, an individual related to an employee by blood or marriage or an employee of another law enforcement authority is prohibited.

42 Pa. C.S. §5803(f.1).

13

Ensuring that the disposition of forfeited property complies with the Controlled Substances Forfeiture Act promotes good government. There is no statute that establishes that a person's mere identity, as opposed to a person's address or driver's license number, is a matter of utmost privacy. We agree with Requesters that the name of the purchaser implicates a minimal privacy interest because that individual has chosen to appear and participate in a public auction. On the other hand, there is a significant public interest in ensuring that law enforcement officials not participate as bidders in the auction to their personal benefit. *See* 42 Pa. C.S. §5803(f.1). The Right-to-Know Law was "designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions…." *Governor's Office of Administration v. Campbell*, 202 A.3d 890, 896 (Pa. Cmwlth. 2019). Disclosure of names of successful bidders at public auctions of forfeited items advances the accountability of the law enforcement authorities responsible for the civil forfeiture of property. The trial court erred in its application of the balancing test.

For these reasons, we reverse the trial court's order with respect to the names on the bidder registration forms. The driver's license and address information should be redacted.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lancaster County District Attorney's
Office

v.

Carter Walker and LNP/Lancaster
Online and The County of Lancaster

Appeal of: Carter Walker and LNP/
Lancaster Online

:
:
:
:
:
:
:
:
:
:
:
:

No. 1457 C.D. 2019

## **O R D E R**

AND NOW, this 10th day of February, 2021, the order of the Court of
Common Pleas of Lancaster County, dated September 12, 2019, is REVERSED in
accordance with the attached opinion.

_____
MARY HANNAH LEAVITT, President Judge